[619 NYS2d 911]

THE PEOPLE OF THE STATE OF NEW YORK, by ROBERT ABRAMS, as Attorney-General of the State of New York, Respondent, v OLIVER SCHOOLS, INC., Appellant.

Fourth Department, November 16, 1994

APPEARANCES OF COUNSEL

*Lee A. Albert,* Buffalo, for appellant.

*G. Oliver Koppell, Attorney-General,* Rochester *(Charles Steinman* of counsel), for respondent.

OPINION OF THE COURT

WESLEY, J.

Defendant Oliver Schools, Inc. (OSI) appeals from an order that dissolved the corporation pursuant to Business Corporation Law article 11. On appeal, OSI contends that dissolution was not warranted, particularly by summary judgment without a jury trial, and that its due process rights were violated. For the reasons set forth below, the order appealed from should be affirmed.

I

OSI operated four business schools in New York State. The majority of OSI's students paid for their tuition through loans obtained from institutional lenders. Most of the student loans were acquired through the Guaranteed Student Loan program (GSL). In New York, the GSL program is administered by the Higher Education Services Corp. (HESC).

Under Federal and State regulations governing the GSL program in New York, if a student who has obtained a GSL withdraws from school, the school is required to refund a portion of the loan to the lending institution (34 CFR 682.607 [c] [2]; 8 NYCRR 2105.2). The refund payments must be made within 30 days of the student's withdrawal, and are used to reduce the outstanding principal the student owes his or her lender (8 NYCRR 2105.2).

In 1989 the Attorney-General commenced this action to dissolve judicially OSI under Business Corporation Law article 11, because OSI's refund arrearages had grown from approximately $414,000 in January 1987 to $738,593.92 in February 1989. The Attorney-General alleged that OSI had conducted its business in a persistently illegal manner and contrary to public policy, in that it had repeatedly failed to make timely refund payments.

By order dated May 10, 1993, Supreme Court granted the Attorney-General summary judgment on the ground that OSI had conducted its business in a persistently illegal manner. The court concluded that the interest of the public would best be served by the judicial dissolution of OSI.

## II

OSI argues that, under Business Corporation Law § 1101 (b), it is entitled to a jury trial. A hearing is required, however, only when there is some contested issue. There is nothing in the nature of a corporate dissolution proceeding that distinguishes it from any other litigated proceeding (see, *Matter of Garay v Langer [No. 10]*, 37 AD2d 545, *affd* 30 NY2d 493; see also, *Matter of Goodman v Lovett*, 200 AD2d 670, *lv dismissed* 84 NY2d 850). OSI has not contested plaintiff's figures on the number of students involved, the amount of refunds owed, or the obvious fact that the amount continued to increase during the two years that OSI said it was trying to resolve the problem. Because there were no contested material issues of fact, a hearing was unnecessary (see, *Matter of Gordon & Weiss*, 32 AD2d 279, 280; *Matter of Probe Personnel Consultants*, 117 Misc 2d 21, 22-23).

OSI also argues that the mixed question of fact and law whether a corporation's misconduct warrants dissolution is inevitably for the jury, citing *People v Abbott Maintenance Corp.* (11 AD2d 136, 140, *affd* 9 NY2d 810). In that case, the First Department reversed an order that dismissed a dissolution action, and held that the Attorney-General had made out a prima facie case for dissolution ·that should go to the jury. The case does not support the proposition that summary judgment granting dissolution of a corporation is at all times inappropriate.

## III

The record supports the court's determination that OSI conducted its business in a persistently illegal manner warranting dissolution under Business Corporation Law § 1101 (a) (2). Section 1101 (a) (2) provides in pertinent part that the Attorney-General may bring an action for dissolution of a corporation upon the ground that the corporation has carried on, conducted or transacted its business in a persistently fraudulent or illegal manner. The statute provides a procedural remedy to the State for the abuse of power entrusted to

its "creature", a corporate body; the statute does not, by itself, create any new liability, penalty or forfeiture *(State of New York v Cortelle Corp.,* 38 NY2d 83, 87-88).

The remedy of dissolution has been described as "a 'judgment * * * of corporate death,' which 'represent[ed] the extreme rigor of the law' " *(California v American Stores Co.,* 495 US 271, 289, quoting *People v North Riv. Sugar Ref. Co.,* 121 NY 582, 608). "Its infliction must rest upon grave cause, and be warranted by material misconduct" *(People v North Riv. Sugar Ref. Co., supra,* at 608). "[T]he State as prosecutor must show on the part of the corporation accused some sin against the law of its being which has produced, or tends to produce, injury to the public. The transgression must not be merely formal or incidental, but material and serious; and such as to harm or menace the public welfare" *(People v North Riv. Sugar Ref. Co., supra,* at 608-609; *see also, People ex rel. Attorney General v Utica Ins. Co.,* 15 Johns 358, 389).

In *North Riv. (supra),* the corporation was dissolved because of anticompetitive activity, i.e., the formation of the "sugar trust". At the end of the last century, prior to the enactment of Federal antitrust laws, forfeiture of a corporation's charter was a remedy employed by many States to combat anticompetitive conduct *(see, e.g., State ex rel. Attorney General v Standard Oil Co.,* 49 Ohio St 137, 30 NE 279; *State v Nebraska Distilling Co.,* 29 Neb 700, 46 NW 155; *see also,* Hovenkamp, *Regulatory Conflict in the Gilded Age: Federalism and the Railroad Problem,* 97 Yale L J 1017, 1034, n 87 [1988]). Under existing statutes, a corporation could also be dissolved for such seemingly trivial violations as failure to file an annual report *(see, People v Buffalo Stone & Cement Co.,* 131 NY 140). In the 1950's, a union insurance fund that was shown to be a Communist front was dissolved on the theory that its officers not only violated Federal law, but placed the interests of the former Soviet Union ahead of those of the policyholders *(see, Matter of People [International Workers Order],* 199 Misc 941, 972-976, *affd* 280 App Div 517, *affd* 305 NY 258, *cert denied* 346 US 857).

Dissolution was held not to be the proper remedy, however, in other early cases. In *Lorillard v Clyde* (142 NY 456), the Court of Appeals held that the public interest did not require dissolution of a corporation that from time to time had employed its ships on routes other than the one identified in its certificate of incorporation. In *People v Ulster & Del. R. R. Co.* (128 NY 240), dissolution of a railroad for failure to extend its

tracks to the limits set forth in its franchise was not required, when the State's railroad commissioners had determined that the public interest did not require the extension *(see also, People v Hudson Riv. Connecting R. R. Corp.,* 228 NY 203, *cert denied* 254 US 631). In *People v Atlantic Ave. R. R. Co.* (125 NY 513), dissolution of a railroad was likewise not required because the railroad had not run its trains for five days. In *Village of Fredonia v Fredonia Natural Gas Light Co.* (169 App Div 690), a gas distribution franchise was not forfeited by its non-use for 2½ years.

Although some of the grounds for dissolution of a corporation by the Attorney-General were omitted in the enactment of the Business Corporation Law *(see,* Joint Legis Comm to Study Revision of Corporation Laws, *Explanatory Memorandum on Business Corporation Law* [Mar. 13, 1961]), the power of the Attorney-General to dissolve corporations for illegal or fraudulent conduct was expanded *(see,* 4 White, New York Corporations ¶ 1101.02, at 11-5). In recent years, the Attorney-General has typically employed corporate dissolution as a remedy for persistent consumer fraud. In *State of New York v Cortelle Corp. (supra),* defendant induced homeowners facing foreclosure to convey title to it in return for loans, and then refused to reconvey title when the loans were paid. In *People v Abbott Maintenance Corp. (supra),* defendant advertised employment opportunities in floor waxing, sold a substantial number of floor waxing machines to trainees at inflated prices, and gave trainees superficial training and lists of a few possible customers. In *Matter of People v Therapeutic Hypnosis* (83 Misc 2d 1068, *mod* 52 AD2d 1017), a corporation claiming to be able to treat physical ailments by hypnosis was dissolved (as was the corporation that purported to certify the individuals involved). In *State of New York v Saksniit* (69 Misc 2d 554), a corporation that sold term papers to college students was enjoined pending its dissolution *(see also, People v B. C. Assocs.,* 22 Misc 2d 43 [Attorney-General was authorized to seek dissolution of disc jockey school that made false assurances of employment prospects upon graduation, and that used a voice test to deceive prospective enrollees into believing they were qualified for radio jobs]).

In the final analysis, the standard set forth in the *North Riv.* case remains the law—before the Attorney-General can obtain judicial dissolution of a corporation, there must be a grave, substantial and continuing abuse, involving a public rather than a private right, by the corporation. New York

case law indicates that the Attorney-General, and the courts, have a considerable amount of discretion in determining whether dissolution is warranted (see, e.g., People v Buffalo Stone & Cement Co., 131 NY, supra, at 143; see also, Installment Dept. v State of New York, 21 AD2d 211, 212).

Employing the standards from North Riv. (supra) and Buffalo Stone & Cement (supra), we conclude that there was no abuse of discretion by the Attorney-General in seeking OSI's dissolution, nor by the court in granting the Attorney-General's summary judgment motion. The uncontroverted evidence established that OSI had been using refund money rightfully belonging to its former students to solve its own cash flow problems. For two years, OSI promised HESC that it would stop, yet the problem kept escalating. When HESC finally suspended OSI's participation in the student loan programs, OSI closed its four New York schools. Only then did the Attorney-General seek dissolution.

OSI argues that the late payment of refunds is a common violation condoned by State and Federal authorities, and that, had its participation in the student loan programs not been suspended, OSI would have been able to continue making refund payments. OSI's arguments have no basis in the record, and thus are not properly before us. Moreover, if OSI's arguments were carried to their logical conclusion, the result would be to bar a dissolution action because the State had previously sought other remedies short of dissolution.

The court appointed a receiver in an attempt to preserve OSI's assets. Only when the receiver's efforts had been frustrated by OSI and its former counsel did the court grant summary judgment to the Attorney-General. During the intervening period, OSI had not come forward with facts showing that summary judgment should have been denied.

## IV

Finally, even assuming that the court was aware of the problems that led to the resignation of OSI's former counsel, we conclude that there is no due process violation in the grant of summary judgment. The lengthy negotiations between the State and OSI prior to the litigation, and the lengthy interval between the commencement of litigation and the grant of summary judgment, provided OSI with sufficient opportunity to be heard at a meaningful time and in a meaningful manner

*(see, People v Apple Health & Sports Clubs,* 80 NY2d 803, 806-807).

Accordingly, the order appealed from should be affirmed.

DENMAN, P. J., GREEN, BALIO and CALLAHAN, JJ., concur.

Order unanimously affirmed, without costs.