**People v VDARE Found., Inc.**

2026 NY Slip Op 30802(U)

March 5, 2026

Supreme Court, New York County

Docket Number: Index No. 452397/2025

Judge: Sabrina Kraus

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

| | | | |
|---|---|---|---|
| PRESENT: | **HON. SABRINA KRAUS** | PART | 57M |
| | *Justice* | | |

----------------------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK,

|  |  |
|---|---|
| INDEX NO. | 452397/2025 |
| MOTION DATE | 12/18/2025 |
| MOTION SEQ. NO. | 001 |

Plaintiff,

- v -

VDARE FOUNDATION, INC., PETER BRIMELOW, and LYDIA BRIMELOW

**DECISION + ORDER ON MOTION**

Defendants.

----------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 16, 17, 18, 21, 24 were read on this motion to/for _____DISMISSAL_____.

## BACKGROUND

The Office of the Attorney General ("OAG") commenced this action against VDARE Foundation, Inc. ("VDARE"), Peter Brimelow and Lydia Brimelow (collectively, "Defendants") seeking, *inter alia*, a permanent injunction, restitution, and judicial dissolution of VDARE for Defendants' alleged violations of the Not-for-Profit Corporations Law ("N-PCL"); Estates, Powers and Trusts Law ("EPTL"); and Executive Law.

## ALLEGED FACTS

The OAG alleges the following information in its Complaint (NYSCEF Doc No. 1).

VDARE was incorporated in the State of New York under the Not-for-Profit Corporations Law in December 1999. Peter Brimelow was a founder of VDARE and a longtime leader of the organization in his roles as director, board chairman, Chief Executive Officer, and President until July 2024. Peter led VDARE alongside with his wife, Lydia Brimelow, who was

452397/2025 PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No. 001

Page 1 of 16

1 of 16

also a director and officer for VDARE. The two maintain an office at 304 Stucco Drive, Berkeley Springs, WV 25411.

VDARE's board of directors has consisted entirely of relatives of Peter Brimelow or his close friends. Lydia Brimelow described the organization as a "mom-and-pop" operation due to the composition of the board. VDARE's board meetings, if they happened at all, were run by Peter and Lydia Brimelow, and non-Brimelow board members were not provided with important financial information unless they requested it. The Complaint argues that this lax oversight on the board allowed Peter Brimelow's compensation to balloon, which became VDARE's largest noncapital expense from 2019 to 2022. For example, VDARE's IRS Form 990 for fiscal year 2023 stated that it paid Peter $25,000.00 but records later showed that it transferred around $280,000.00 to him that year.

Around January 2019, Lydia Brimelow explored purchasing a property in Berkeley Springs, West Virginia (the "Castle") built in the style of a medieval castle replete with a cylindrical tower on the corner of the building and a garrison-style walkway on top. Lydia called a special meeting of the board to discuss the purchase of the Castle on January 17, 2020, of which VDARE has not produced minutes. VDARE purchased the Castle for $1.4 million and closed on the property on or around February 14, 2020, and the Brimelows moved into the Castle or a cottage on the Castle grounds on September 18, 2020. The Brimelows later moved into the Castle as a residency, but their becoming residents at the Castle was neither reviewed nor approved by the board.

On July 21, 2020, Lydia Brimelow incorporated BBB, LLC ("BBB") as a single-member, for-profit corporation in the State of West Virginia. The address for BBB's principal place of business was listed as the Castle's. Lydia Brimelow has been BBB's sole manager and employee

452397/2025  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Page 2 of 16

2 of 16

[* 2]

since its incorporation. Around the same time, Brimelow incorporated the Berkeley Springs Castle Foundation ("BCF"), a not-for-profit corporation in the State of West Virginia with its principal place of business also listed as the Castle's address. The majority of BCF's board has similarly been comprised of Brimelow family members.

On December 29, 2020, VDARE conveyed several parcels on the Castle grounds to BCF, including the Castle itself, but BCF made no down payment to VDARE prior to these conveyances. On the same day, VDARE conveyed the remaining parcels of the Castle grounds to BBB. The only consideration that BBB provided to VDARE was a promissory note and a deed of trust for $310,000.00.

After receiving the deed to the Castle, BCF leased the building back to VDARE and charged VDARE rent. Starting in February 2021, BCF made monthly payments of $4,700.09 to VDARE that it purported were mortgage payments while VDARE simultaneously made monthly payments to BCF of $6,000.00 that it purported were rental payments. Under the lease, VDARE remained responsible for all expenses and taxes on the Castle.

From May 2021 through February 2023, VDARE also transferred around $250,000.00 to BBB in what was purported to be loans. There is no evidence that the amounts were ever paid back to VDARE, nor is there any evidence that BBB provided VDARE with any security for the loans. After purportedly lending BBB the money, VDARE entered into an agreement to borrow up to $2 million from the corporation Mountain States Funding ("MSF"), and Lydia Brimelow's father, Joseph Sullivan, worked for MSF and was VDARE's point-of-contact for the transaction.

At some point, MSF offered VDARE $400,000.00 to purchase VDARE's ownership interests in BBB; however, VDARE sold MSF such interests for only $68,000.00 and also sold

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Page 3 of 16

3 of 16

[* 3]

VDARE's right to collect BBB's outstanding commercial debt for $100,000.00. VDARE's board was not consulted prior to the sale nor did the Attorney General or a court authorize the sale.

Following regulatory scrutiny by the OAG, VDARE increased monthly rental payments to BCF from $6,000.00 to $10,000.00 in March 2023, and from $10,000.00 to $30,000.00 in July 2023. That July, VDARE also released BCF from the mortgage it held on BCF's share of the Castle. At that time, BCF only paid VDARE $126,926.46 on the $1.08 million on the note. There was no evidence that VDARE's releasing BCF of its obligations under the mortgage was considered by VDARE's board.

In July 2024, VDARE publicly announced that it had run out of operating funds and would cease operations. It had approximately $150,000.00 cash on hand. VDARE discontinued publishing on its website and closed the site's archives. BCF, however, continued to operate after VDARE ceased operations, providing historical tours of the Castle, murder mystery dinners, and rental space for special events.

VDARE failed to register and file accurate charitable reports under Article 7-A of the Executive Law for fiscal years 2021, 2022 and 2023. In August 2024, Office of the Attorney General Charities Bureau notified VDARE by letter that its 2021 CHAR500 submission was deficient. However, VDARE was still soliciting donations on its website by July 2024.

## PENDING MOTION

On February 27, 2026, VDARE moved pursuant to CPLR § 3211(a)(7) for an order dismissing OAG's fifth cause of action for wrongful related-party transactions; sixth cause of action for breach of EPTL § 8-1.4; seventh cause of action for illegal solicitation of donations in violation of the Executive Law; eighth cause of action for false or deficient filings in violation of the Executive Law; ninth cause of action for failure to obtain OAG approval for the sale of BBB

452397/2025  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Page 4 of 16

4 of 16

in violation of the N-PCL; and tenth and eleventh causes of action for dissolution of VDARE pursuant to the N-PCL (NYSCEF Doc No. 16 [mot. seq. 001]). The motion was fully briefed and marked submitted on February 27, 2026.

The motion is denied in its entirety for the reasons set forth below.

## DISCUSSION

A court will dismiss a cause of action when the movant demonstrates that "the pleading fails to state a cause of action" (CPLR § 3211(a)(7)). Courts "give the complaint a liberal construction, accept the allegations as true and provide [the nonmovant] with the benefit of every favorable inference" (*Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc.*, 30 NY3d 572, 582 [2017]). A court does not weigh "[w]hether a plaintiff can ultimately establish its allegations" as part of the calculus in determining a motion to dismiss (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]). The court "merely examines the adequacy of the pleadings," unlike a motion for summary judgment in which the court "searches the record and assesses the sufficiency of the parties' evidence" (*Davis v Boeheim*, 24 NY3d 262, 268 [2014]).

### *The Court Denies VDARE's Motion to Dismiss the Tenth and Eleventh Causes of Action*

VDARE first argues that the Court should dismiss OAG's tenth and eleventh causes of action because the Complaint fails to allege any self-dealing regarding the Castle transactions.

N-PCL § 112(a) provides:

The attorney-general may maintain an action or special proceeding:

> (1) To annul the corporate existence or dissolve a corporation that has acted beyond its capacity or power or to restrain it from carrying on unauthorized activities;

* * *

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 5 of 16
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

5 of 16

(7) To enforce any right given under this chapter to members, a director or an officer of a charitable corporation. The attorney-general shall have the same status as such members, director or officer.

N-PCL § 1101(a) provides:

The attorney-general may bring an action for the dissolution of a corporation upon one of more of the following grounds:

\* \* \*

(2) That the corporation has exceeded the authority conferred upon it by law, or has violated any provision of law whereby it has forfeited its charter, or carried on, conducted or transacted its business in a persistently fraudulent or illegal manner, or by the abuse of its powers contrary to public policy of the state has become liable to be dissolved.

Finally, N-PCL § 1102(a)(2)(D) provides:

(a) A petition for the judicial dissolution of a corporation may be presented:

\* \* \*

(2) By ten percent of the total number of members or by any director, in the following cases:

\* \* \*

(D) The directors or members in control of the corporation have looted or wasted the corporate assets, have perpetuated the corporation solely for their personal benefit, or have otherwise acted in an illegal, oppressive or fraudulent manner.

(b) In any proceeding for judicial dissolution the attorney-general shall be **a** necessary party.

Judicial dissolution of a corporation is an extraordinary remedy representing "the extreme rigor of the law" (*California v American Stores Co.*, 495 US 271, 289 [1990], quoting *People v North Riv. Sugar Ref. Co.*, 121 NY 582, 608 [1890]). When considering whether the judicial dissolution is an appropriate remedy in an action brought by the Attorney General, "the interest of the public is of paramount importance" (N-PCL § 1109(b)(1)). To warrant the drastic remedy of dissolution, the corporation must have engaged in "material misconduct" that "has produced,

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Page 6 of 16

6 of 16

or tends to produce, injury to the public" (*North Riv. Sugar Ref. Co.*, 121 NY 582, 608, 608–09 [1890]).

An examination of the prior case law on judicial dissolution is necessary as courts "have a considerable amount of discretion in determining whether dissolution is warranted" (*People v Oliver Sch.*, 206 AD2d 143, 147–48 [4th Dept 1994]; *see also People v National Rifle Assn. of Am., Inc.*, 74 Misc 3d 998, 1020–22 [Sup Ct, NY County 2022] [*examining judicial dissolution precedents as it relates to various corporations*]). In *People v Abbott Maintenance Corp.*, the First Department held that the Attorney General had made a *prima facie* case for dissolution of Abbott Maintenance Corporation, reversing the decision of the trial court (11 AD2d 136, 139 [1st Dept 1960]). The corporation there was accused of deceptively advertising open job positions for floor waxing and then subsequently inducing applicants to enter into contracts for the installment purchase of a floor waxer that was over nine times the cost of the waxer's market rate (*id.* at 139). The First Department reasoned that such conduct became of the public concern because it "transcend[ed] private controversy between the individual members of the public shown to be misled and the Abbott corporation" (*id.*).

In *People v Oliver School*, the Fourth Department held that the Attorney General brought a valid action for corporate dissolution under the Business Corporation Law, affirming the decision of the lower court (206 AD2d 143, 145 [4th Dept 1994]). The defendant-school in that case was using refund money that rightfully belonged to its former students to remediate its own issues with cash flow (*id.* at 148). The Fourth Department reasoned that a jury could find that the conduct constituted a "grave, substantial and continuing abuse, involving a public rather than a private right," by the school (*id.* at 147–48).

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Page 7 of 16

7 of 16

Dissolution may also be appropriate when the corporation exists as a "sham charity" or an entity meant to carry out criminal activity (*see* 134 AD3d 1081, 1081 [2d Dept 2015]). In *People v Coalition Against Breast Cancer, Inc.*, the Second Department affirmed the judgment of the trial court ordering dissolution of the corporation (134 AD3d 1081, 1081 [2d Dept 2015]). The defendant had been soliciting donations on behalf of a different charity that purported to help women detect early signs of breast cancer and to fund research, but neither the defendant nor the other charity was involved in any breast cancer research (*id.* at 1082). Similarly, in *People v Zymurgy, Inc.*, the First Department held that dissolution was an appropriate remedy for a corporation that admitted that it never held board meetings, likely served as a front for another entity, and likely engaged in criminal conduct (233 AD2d 178, 178 [1st Dept 1996]).

Conversely, the New York County Supreme Court (Cohen, J.S.C.) dismissed the remedy of dissolution pursuant to CPLR § 3211(a)(7) in *People v National Rifle Association of America* (74 Misc. 3d 998, 1024 [Sup Ct, NY County 2022]). The Attorney General there alleged that the officers of the National Rifle Association ("NRA") used the corporate funds for their own personal benefit, such as for repeated travel on a private jet and a vacation on a yacht, and that the corporation's filings with the New York Charities Bureau contained materially false statements (*id.* at 1006–07, 1009–10). The Supreme Court reasoned that the alleged mismanagement of the NRA was "troubling" but not that the conduct "has produced, or tends to produce, injury to the public" as the main victim of the alleged conduct "has been . . . the NRA and its members" (*id.* at 1023).

The allegations in the OAG's Complaint include, *inter alia*, the following:

(1) A majority of voting members on VDARE's board consisted of relatives of Peter Brimelow or his close personal friends, making the corporation a veritable "mom-and-pop" shop as stated by Lydia Brimelow (NYSCEF Doc No. 1 ¶¶ 46, 49).

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Page 8 of 16

8 of 16

[* 8]

(2) Directors other than the Brimelows were never provided with important financial information but such was made "available upon request" (*id.* ¶ 51).

(3) Peter Brimelow's compensation was reportedly VDARE's largest noncapital expense (*id.* ¶ 54).

(4) Peter and Lydia Brimelow were able to use this lax board oversight to pay a for-profit corporation, of which Peter and Lydia Brimelow were beneficial owners, over $1 million in VDARE's funds (*id.* ¶¶ 57–59).

(5) Lydia Brimelow used VDARE's assets to purchase the Castle, which represented around 30% to 40% of VDARE's assets in the fiscal year 2020 (*id.* ¶ 69–72, 81). Peter and Lydia Brimelow then conveyed the Castle to other BBB and BCF, which the Brimelows also owned or controlled (*id.* ¶¶ 95–97). VDARE then paid these corporations for exorbitant rent and maintenance fees, resulting in VDARE sustaining a loss for years (*id.* ¶¶ 102–07).

(6) Further, after learning of the OAG's investigation into VDARE, Peter and Lydia increased the purported rental payments to BBB and BCF (*id.* ¶¶ 117–18).

(7) VDARE did not file an annual report with the Charities Bureau for fiscal years 2022 and 2023 (*id.* ¶¶ 148–150). VDARE nevertheless continued to solicit donations as late as July 14, 2025 (*id.* ¶ 154).

In light of these allegations, VDARE's bare assertion that the Complaint fails to allege any self-dealing is without merit. The Complaint, if proven, details a staggering number of self-aggrandizing transactions with the Brimelows using VDARE as the linchpin for the scheme. While VDARE's alleged misconduct does not reach the levels of public harm as those of the organizations in *Abbott Maintenance*, *Oliver School*, or *Coalition Against Breast Cancer*, the Complaint does outline significant asset transfers and possibly fraudulent rental payments from VDARE to the Brimelows' West Virgina entities. These allegations would render VDARE a "sham charity" of which dissolution is an appropriate remedy under *Coalition Against Breast Cancer* and *Zymurgy* because VDARE was "actually being controlled by" the West Virginia entities to which "charitable contributions are being funneled" (*see Zymurgy*, 233 AD2d at 178; *see also Coalition Against Breast Cancer*, 134 AD3d 1081, 1081).

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY          Page 9 of 16
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

9 of 16

VDARE's alleged misconduct also falls well within the statutory language of N-PCL § 1101(a)(1) for having "carried on, conducted or transacted its business in a persistently fraudulent or illegal manner" through its allegedly fraudulent rental payments and loan agreements with BBB and BCF and within N-PCL § 1102(a)(2)(D) for having "looted or wasted the corporate assets" and "perpetuated the corporation solely for their personal benefit."

Accordingly, the Court denies VDARE's motion to dismiss the tenth and eleventh causes of action as the Complaint adequately pleads violations of N-PCL §§ 1101 and 1102 that may require dissolution as a remedy.

### *The Court Denies VDARE's Motion to Dismiss the Fifth Cause of Action*

VDARE next argues that the Court should dismiss the fifth cause of action because the Complaint lacks any allegation of VDARE engaging in a transaction wherein a related party had a financial interest.

N-PCL § 715(f) provides:

The attorney general may bring an action to enjoin, void or rescind any related party transaction or proposed related party transaction that violates any provision of this chapter or was otherwise not reasonable or in the best interests of the corporation at the time the transaction was approved, or to seek restitution, and the removal of directors or officers, or seek to require any person or entity to:

(1) Account for any profits made from such transaction, and pay them to the corporation;

(2) Pay the corporation the value of the use of any of its property or other assets used in such transaction;

(3) Return or replace any property or other assets lost to the corporation as a result of such transaction, together with any income or appreciation lost to the corporation by reason of such transaction, or account for any proceeds of sale of such property, and pay the proceeds to the corporation together with interest at the legal rate; and

(4) Pay, in the case of willful and intentional conduct, an amount up to double the amount of any benefit improperly obtained.

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Page 10 of 16

[* 10]

N-PCL § 102(a)(23) defines a "related party" as:

> (i) any director, officer or key person of the corporation or any affiliate of the corporation; (ii) any relative of any individual described in clause (i) of this subparagraph; or (iii) any entity in which any individual described in clauses (i) and (ii) of this subparagraph has a thirty-five percent or greater ownership or beneficial interest or, in the case of a partnership or professional corporation, a direct or indirect ownership interest in excess of five percent

Finally, N-PCL § 102(a)(24) defines a "related party transaction" as:

> any transaction, agreement or any other arrangement in which a related party has a financial interest and in which the corporation or any affiliate of the corporation is a participant, except that a transaction shall not be a related party transaction if: (i) the transaction or the related party's financial interest in the transaction is de minimis, (ii) the transaction would not customarily be reviewed by the board or boards of similar organizations in the ordinary course of business and is available to others on the same or similar terms, or (iii) the transaction constitutes a benefit provided to a related party solely as a member of a class of the beneficiaries that the corporation intends to benefit as part of the accomplishment of its mission which benefit is available to all similarly situated members of the same class on the same terms.

As outlined above, the Complaint alleges facts showing that VDARE transferred ownership of the Castle to entities also owned or controlled by the Brimelows and that VDARE also transferred funds to these entities under the guise of rental payments and loans. The Complaint also alleges that VDARE, through Lydia Brimelow, paid Joseph Sullivan, her father, over $230,000.00 from October 2019 to December 2024 for business advice (NYSCEF Doc No. 1 ¶ 84–86). VDARE also allegedly housed their children at the Castle (*id.* ¶ 188). These allegations alone are sufficient to plead a related party transaction under the plain language N-PCL § 715(f).

VDARE argues that N-PCL § 715(f) requires that a related party must reap a "direct" financial benefit to fall under the statute's proscription (NYSCEF Doc No. 17, at 5–6). However, the plain language of the statute negates this argument as it provides that a related party having "a financial *interest*" to the transaction—not receiving a direct financial benefit—engages in a related party transaction (N-PCL § 102(a)(24) [emphasis added]).

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Page 11 of 16

[* 11]

VDARE's reliance on *Shapiro v Rockville Country Club, Inc.* is also misplaced as the issue in that case was not about whether the related party directly benefited from a corporate transaction but whether such benefit was equally available to the shareholders of a for-profit corporation governed by the Business Corporation Law rather than the N-PCL (*see* 22 AD3d 657, 659 [2d Dept 2005], citing Business Corporation Law § 713(a)).

Equally unavailing is VDARE's argument that the statute requires that a corporation is only guilty of a related party transaction upon a showing of "fault" to (NYSCEF Doc No. 17, 8–9). Assuming VDARE uses the word "fault" in reference to some sort of culpable mental state (*e.g.*, negligence, recklessness, or knowledge), the statute does not contain this language and VDARE otherwise cites no controlling legal authority holding that such a transaction requires one of these mental states (*see* N-PCL § 102(a)(24) ["any transaction in which a related party has a financial interest and in which the corporation or any affiliate of the corporation is a participant"]).

Accordingly, the Court denies VDARE's motion to dismiss the fifth cause of action as the allegations in the Complaint adequately plead a violation of N-PCL § 715(f).

### *The Court Denies the Motion to Dismiss the Sixth Cause of Action*

VDARE argues that the Complaint fails to plead the sixth cause of action for violations of EPTL § 8-1.4 because it is duplicative of the fifth cause of action.

EPTL § 8-1.4 provides, in relevant part:

> (a) For the purposes of this section, "trustee" means (1) any individual, group of individuals, executor, trustee, corporation or other legal entity holding and administering property for charitable purposes, whether pursuant to any will, trust, other instrument or agreement, court appointment, or otherwise pursuant to law, over which the attorney general has enforcement or supervisory powers, (2) any non-profit corporation organized under the laws of this state for charitable purposes[.]

* * *

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Page 12 of 16

12 of 16

(d) Every trustee shall file with the attorney general, within six months after any property held by him or her or any income therefrom is required to be applied to charitable purposes, a copy of the instrument providing for his or her title, powers and duties; provided, however, that any trustee currently registered with the department of law pursuant to article 7-A of the executive law shall be deemed to have complied with this paragraph. If any property held by a trustee or any income therefrom is required to be applied to charitable purposes at the time this section becomes effective, the filing shall be made within six months thereafter.

The Attorney General has standing to maintain an action under EPTL § 8-1.4(m) to ensure the "proper administration of any trust, corporation or other relationship to which this section applies" (*id.* § 8-1.4(m)). The purpose of this provision is "to prevent the misapplication of property held for a [tax] exempt purpose" (*In re North Manursing Wildlife Sanctuary, Inc.*, 48 NY2d 135, 142 [1979]).

As stated above, the Complaint adequately alleges that VDARE misused its charitable assets to the Brimelows' personal enrichment while also failing to file necessary reports with the Charities Bureau. The Court thus denies the motion to dismiss the sixth cause of action. As the two causes of action are pursuant to different statutory provisions, the court does not find them to be duplicative.

### *The Court Denies the Motion to Dismiss the Seventh and Eighth Causes of Action*

VDARE argues that the Court should dismiss the seventh and eighth causes of action as liability for them would effectuate a "corporate death sentence" for VDARE akin to that of liability for the tenth and eleventh causes of action.

Executive Law § 172 provides:

1. Every charitable organization, and any charitable organization registered or required to be registered pursuant to article eight of the estates, powers and trusts law, except as otherwise provided in section one hundred seventy-two-a of this article, which intends to solicit contributions from persons in this state or from any governmental agency shall, prior to any solicitation, file with the attorney general a prescribed registration form[.]

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Page 13 of 16

13 of 16

[* 13]

Executive Law § 172-b(1)–(3) lists the reports that an organization is required to file based on the organization's approximate gross revenue. Executive Law § 172-b(5) provides that the Attorney General "shall cancel the registration of any organization" that fails to comply with the prior sections.

As stated above, the Complaint contains factual allegations that VDARE failed to file the necessary reports with the Charities Bureau for fiscal years 2022 and 2023 but nevertheless solicited donations as late as July 2024. The Court thus denies the motion as this information is sufficient to plead causes of action under the Executive Law.

VDARE cites no controlling authority holding that the seventh and eighth causes of action require the same showing of public harm or sham entity status for the judicial dissolution of a corporation, so their sole argument for dismissal without merit.

### *The Court Denies the Motion to Dismiss the Ninth Cause of Action*

VDARE argues that the Complaint fails to plead the ninth cause of action because the Complaint does not allege that BBB represented at least 80% of VDARE's assets such that the sale of BBB to MSF constituted substantially all of VDARE's assets.

N-PCL § 510 provides:

(a) A sale, lease, exchange or other disposition of all, or substantially all, the assets of a corporation may be made upon such terms and conditions and for such consideration, which may consist in whole or in part of cash or other property, real or personal, including shares, bonds or other securities of any other domestic or foreign corporation or corporations of any kind, as may be authorized in accordance with the following procedure:

* * *

(3) If the corporation is, or would be if formed under this chapter, classified as a charitable corporation under section 201 (Purposes) such sale, lease, exchange or other disposition shall in addition require approval of the attorney general or the supreme court in the judicial district or of the county court of the county in which the corporation has its office or principal place of carrying out the purposes for which it was formed in accordance with section 511 (Petition for

452397/2025   PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No. 001

Page 14 of 16

14 of 16

court approval) or section 511-a (Petition for attorney general approval) of this article.

The purpose of this provision is "to protect the beneficiaries of a charitable organization from loss through unwise bargains and from perversion of the use of the property" (*Rose Ocko Found., Inc. v Lebovits*, 259 AD2d 685, 688 [2d Dept 1999]).

The Complaint first alleges that VDARE's public disclosures regarding whether it listed BBB as an asset were "inconsistent" (NYSCEF Doc No. 1 ¶ 124). It then alleges that MSF's $400,000 offer to VDARE for the purchase of BBB represented "far more than half" of VDARE's reasonably estimated assets and that VDARE did not get approval from the Attorney General or the Supreme Court before the sale (*id.* ¶¶ 125, 126). However, the Complaint makes it unclear as to when VDARE acquired BBB as an asset. It alleges that BBB was an independent business association incorporated by Lydia Brimelow, albeit for the unlawful purposes of funneling money and real estate from VDARE to BBB (*id.* ¶¶ 93, 97, 109), and it then jumps to BBB's being sold by VDARE as an asset (*id.* ¶¶ 125–127). Nevertheless, the Complaint alleges that MSF did purchase VDARE's ownership interests in BBB—which presumes that VDARE owned interests in BBB—and such amounts could have constituted "substantially all" of VDARE's assets as the Court is required to give the nonmovant "the benefit of every favorable inference" on a motion to dismiss (*Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc.*, 30 NY3d 572, 582 [2017]).

VDARE cites no controlling legal authority in support of its argument that the OAG was required to plead that the sale constituted 80% or more of VDARE's assets to support a claim under N-PCL § 510(a). Equally unavailing is VDARE's argument in reply that the OAG failed to plead two of the three elements enumerated by *Rose Ocko Found., Inc. v Lebovits* as the purported "elements" in the case were not requirements to plead a cause of action under § 510(a)

452397/2025  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL
Motion No.  001

Page 15 of 16

15 of 16

but simply aspects of the Second Department's reasoning in coming to its decision (259 AD2d 685, 688 [2d Dept 1999]).

Accordingly, the Court denies VDARE's motion to dismiss the ninth cause of action.

## CONCLUSION

Accordingly, it is hereby:

ORDERED that the motion of VDARE (mot. seq. 001) is denied in its entirety; and it is further

ORDERED that, within twenty (20) days from entry of this order, Plaintiff shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre Street, Room 119, New York, NY 10007); and it is further

ORDERED that such service upon the Clerk shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh); and it is further

ORDERED that movant file an answer 10 days from receipt of notice of entry; and it is further

ORDERED that the parties appear for a virtual preliminary discovery conference via MS Teams on April 14, 2026, at 12pm.

This constitutes the decision and order of this Court.

20260305154210SBKRAUS6E6DBBB13A3F4AD59D3DEAB3A35B4396

__3/5/2026__
**DATE**

**SABRINA KRAUS, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**452397/2025  PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK vs. VDARE FOUNDATION, INC. ET AL Motion No.  001**

**Page 16 of 16**

16 of 16